S. D. HILLMAN v. BOARD OF COUNTY COMMISSIONERS OF
HENNEPIN COUNTY.[1]

July 5, 1901.

Nos. 12,653—(176).

**Fee of Commissioners.**

G. S. 1894, § 897, is the only authority providing for compensation of
commissioners appointed by the governor to hear and report evidence in
proceedings for the removal of a county officer, which is five dollars per
day during the time of service of such commissioners, to be paid by the
county whose official is investigated.

**Same.**

The governor has no authority to enlarge the fees above provided for
(except from his contingent fund), or to impose an additional obligation
upon the county for necessary stenographic services in making a tran-
script of the evidence received on the hearing and reported to the execu-
tive.

Action in the district court for Hennepin county to recover
$526.25 for services rendered the county. Defendant demurred to
the complaint on the ground that it did not state a cause of action.
The case was heard before Simpson, J., who sustained the de-
murrer as to all claims in excess of $85 and ordered judgment for
plaintiff for that amount. From a judgment entered pursuant to
the order, plaintiff appealed. Affirmed.

*Hall & Kolliner,* for appellant.

*Fred H. Boardman,* County Attorney, and *C. L. Smith,* Assistant
County Attorney, for respondent.

LOVELY, J.

The plaintiff and H. D. Irwin were appointed commissioners by
Governor Lind to hear and report the evidence in proceedings for
the removal of the register of deeds of Hennepin county. Plain-
tiff was an expert stenographer, selected, on account of his ability
in that respect, to take the voluminous evidence to be offered upon

[1] Reported in 86 N. W. 890.

that inquiry, upon an agreement that he should take and report all the evidence, for which he was promised compensation at the usual rates paid court stenographers by law for that work. The hearing occupied seventeen days. The plaintiff afterwards transcribed the testimony at the request of the governor, and reported the same. The value of his services under the alleged agreement amounted to $526.25. After the plaintiff had concluded his labors, he presented his bill to the board of county commissioners of Hennepin county, who, under the view that he was entitled by law to $5 a day, allowed him $85, and no more. Plaintiff brings this suit for the amount of his claim. The above facts are summarized from the complaint. Defendant demurs to its sufficiency. The court below held that it did not state a cause of action against the county, and plaintiff appeals.

The simple question thus presented for our decision is whether a claim existed against Hennepin county for more than $5 per day for the actual time occupied by the commissioners in hearing the testimony upon the removal proceedings. This question, as we view it, must be determined by the statutory rules applicable in such cases. G. S. 1894, § 894, provides that, when the governor proceeds in a matter of the removal of a register of deeds, he

"Shall appoint special commissioners to take and report testimony for and against such officer, to be used in determining his guilt or innocence."

G. S. 1894, § 895, provides:

"Each commissioner, before he enters upon his duties in taking such testimony, shall be sworn to truly and faithfully take and record the testimony of each witness, and report the same fully and impartially to the governor within the time required by the commission of his appointment."

G. S. 1894, § 897, provides:

"The fees of commissioners for such services shall be the same as now allowed by law to referees in actions brought in the district courts of this state, and shall be paid out of moneys not otherwise appropriated, on the order of the governor; and on presentation of such order to the auditor of the state, he shall draw his warrants on the state treasurer in favor of the person

entitled to the same: provided, that when testimony is taken for and against a county officer, like fees of the commissioner shall be paid by the county wherein such officer was elected, and be allowed in the same manner as other claims against the county."

Under G. S. 1894, § 5572, fees of referees·are five dollars to each for every day spent in the business of the reference; but the parties may agree in writing upon any other rate of compensation, and thereupon such rate shall be allowed. It is impossible, by any perversion of the rules of interpretation, to avoid the plain construction of these statutes, which exclude opportunity for implication by an express provision designating the amount which referees shall receive for their services. It may be stated that the plaintiff does not claim for time engaged in making the transcript, which would present another question, but for the services in taking evidence and making the transcript for the use of the governor, and for which there is no specific or expressed provision of law. The provisions above quoted furnish the only authority by which counties can be required to pay for services such as have been rendered by the plaintiff in this case. It may well be admitted that the law is defective in not providing sufficient compensation for furnishing transcripts of evidence taken on inquiries for the removal of county officers, but it is a casus omissus which can hardly be rectified by the judicial branch of the government.

Payment from the public funds for all official duties must rest upon legislative sanction, which is the exclusive compensative and disbursing power of the government. Omissions to meet the necessities and exigencies of the times are frequent. For illustration: The chief justice of this court has had imposed upon him the duty of sitting upon the board of pardons, which requires the performance of onerous and burdensome duties, yet no compensation has been provided therefor. Justices of this court have often been appointed on commissions without any provision for compensation. Perhaps more onerous and burdensome than this is the jury duty, which is, particularly in justice court, underpaid, to the public detriment in securing the best men for that service. Witnesses for the defense in criminal cases are required to attend and give evidence, and may be compelled to do so, yet no provision

exists for their compensation. These matters are a few of many instances to be rectified when the proper attention is given to the subject by the lawmakers, but the fact that in each and every case referred to public officials and citizens are required to perform duties without compensation does not furnish the basis of an implied contract to pay for the same. The plaintiff makes a very strong argument upon equitable reasons for compelling the defendant to audit what seems to be a reasonable bill for services actually rendered, but it falls short of effective and practical value by its failure to point out any statutory provision under which his claim can be allowed.

Counsel earnestly urge that the agreement by the governor to pay the stenographer such fees as were allowed him for his work, equal to that of court stenographers, makes an exception in this case; but it is one of the elementary principles of government that the executive of the state has no power to make any contract or agreement that can bind any other branch of the government, without express authority to do so. The legislature holds the purse of the state, and accepting the statement in the complaint as true, that the governor agreed to pay a different sum than provided by law for the services rendered, we should assume that the executive intended to do so out of the contingent fund which the legislature has provided him for unspecified occasions, among which we would class the one under consideration, rather than to allow the governor to annul the statute or make a contract for Hennepin county in excess of his constitutional power.

That the services of plaintiff were useful and meritorious there is no reason to doubt. The gentleman who performed them is a very efficient stenographer, and was no doubt misled in the belief that he would receive his pay when the extra services were rendered. If, through misunderstanding or mistake of himself or the executive, he has not received proper compensation under the agreement referred to, or if the contingent fund is not sufficient for that purpose, we have no doubt that the justice of his claim will appeal to the legislature, and, as in previous cases of similar character, receive proper attention; but the compensation to be allowed and audited by the county commissioners of a county in

such cases is fixed in express terms by statute. Within that limit defendant had allowed plaintiff's claim, and we can no more impose obligations not authorized by law than the legislature can interfere with the functions of this court. To do so would be a plain usurpation of power, in violation of constitutional obligations. While we are withheld from such a course by the plainest obligations of duty, we can, at least, express a desire that the equitable character of plaintiff's claim may receive hereafter the just consideration it demands.

Judgment affirmed.