Elizabeth Lakowski, Appellee, v. Raymond Kustohs, Appellant.

Gen. No. 43,612.

558

Opinion filed April 24, 1946. Released for publication May 10, 1946.

JAMES A. MAHONEY, of Chicago, for appellant.

DANKOWSKI & DANKOWSKI, of Chicago, for appellee.

MR. JUSTICE BURKE delivered the opinion of the court.

Elizabeth Lakowski filed a statement of claim in the municipal court of Chicago for possession of the four

room second floor apartment at 3943 Cornelia avenue in Chicago. A trial before the court without a jury resulted in a finding and judgment that plaintiff was entitled to possession of the premises and that a writ of restitution issue. Defendant appealed.

The first criticism leveled at the judgment is that the statement of claim fails to state a cause of action. The record shows that before any testimony was given, defendant moved to strike the statement of claim on the ground that it did not state a cause of action. Defendant did not specify the defect complained of. After discussion, the court permitted plaintiff to amend the statement of claim on its face, whereupon the motion to strike was withdrawn. Defendant did not thereafter renew his motion to strike. Par. 3 of sec. 42 of the Civil Practice Act [Ill. Rev. Stat. 1945, ch. 110, par. 166, subpar. (3); Jones Ill. Stats. Ann. 104.042, subpar. (3)] provides that all defects in pleadings, either in form or substance, not objected to in the trial court, shall be deemed to be waived. As defendant did not object to the amended statement of claim in the trial court, he cannot do so now.

Defendant went into possession of the premises under a lease dated April 11, 1942 between ''Helen Lakowski, as Agent for the Owners,'' and defendant, for a term commencing May 1, 1942 and expiring April 30, 1943. On February 26, 1943 plaintiff gave written notice to defendant that upon the expiration of the lease his tenancy would be from month to month, should he desire to remain. The lease called for the payment of a monthly rental of $40. In March 1943 this rental was reduced by the OPA to $37.50 and in July 1945 to $34.50. It is clear that the landlord did not intend that the lease should continue on a year to year basis. On and after May 1, 1943 defendant held over on a tenancy from month to month, subject, however, to the operation of the Rent Control Regulation of the OPA.

Defendant urges that plaintiff did not establish any right to possession under sec. 6 (a) (6) of the Rent Regulation for Housing, which provides that so long as the tenant continues to pay the rent to which the landlord is entitled, no tenant shall be removed from any housing accommodations by action to evict or to recover possession by exclusion from possession, or otherwise, notwithstanding that such tenant has no lease, or that his lease or other rental agreement has expired or otherwise terminated, and regardless of any contract, lease, agreement or obligation heretofore or hereafter entered into which provides for entry of judgment upon the tenant's confession for breach of the covenants thereof, or which otherwise provides contrary "hereto," unless the landlord owned or acquired the right to possession of the housing accommodations prior to October 20, 1942, and has an immediate compelling necessity to recover possession of such accommodations for use and occupancy as a dwelling for himself, or has served during the period of the war emergency in the armed forces of the United States and in good faith seeks possession.

The building in which the apartment occupied by defendant is located, consists of six apartments. Plaintiff testified that she and her husband were the owners of the property; that her husband, due to poor health, "has lost his work"; that she and her husband "needed to move into this property so that he could replace the janitor there and reduce expenses to make up for his lost income from wages"; that her husband suffers from arthritis; that he is partially crippled by it; that "they have been the full owners of the property since 1940, and owned it jointly with a partner since 1926." Plaintiff testified that defendant paid his rent every month. Plaintiff's husband testified that he was "crippled with arthritis" and unable to work "at his previous employment;" that his

daughter Helen signed the lease and that "he purchased the property in 1926."

■ ■ Previous to September 15, 1945 sec. 6 (a) and 6 (6) provided that so long as a tenant continued to pay the rent to which the landlord was entitled, no tenant shall be removed from any housing accommodations by action to recover possession, unless the landlord owned the housing accommodations prior to October 20, 1942 "and seeks in good faith to recover possession of such housing accommodations for immediate use and occupancy as a dwelling for himself." The amendment to sec. 6 (a) (6), effective September 15, 1945, requires that the landlord prove that he owned the housing accommodations prior to October 20, 1942, and that he has "an immediate compelling necessity to recover possession of such accommodations for use and occupancy as a dwelling for himself, or has served during the period of the war emergency in the Armed Forces of the United States, and in good faith seeks possession for his own occupancy." Previous to the amendment the landlord was required to prove ownership or right to possession prior to October 20, 1942 and that he sought in good faith to recover possession of such housing accommodations for immediate use and occupancy as a dwelling for himself. Under the amendment to sec. 6 (a) (6) such a landlord must prove that he "has an immediate compelling necessity to recover possession of such accommodations for use and occupancy as a dwelling for himself," or that he has served during the period of the war emergency in the armed forces of the United States and in good faith seeks possession for his own occupancy. Under this amendment a landlord who is not a veteran must prove that he owned or acquired an enforceable right to buy, or the right to possession of the housing accommodations prior to October 20, 1942 and that he has an immediate compelling

necessity to recover possession of such accommodations for use and occupancy as a dwelling for himself. If the landlord is a veteran he has a choice of proving an immediate compelling necessity to recover possession for use and occupancy as a dwelling for himself, (in which case he is not required to prove that he is a veteran), or that he has served during the war emergency in the armed forces of the United States and in good faith seeks possession for his own occupancy. Defendant urges both the "good faith" clause and the "immediate compelling necessity" clause. Prior to September 15, 1945 the regulation required proof of good faith. The amended regulation effective that day, requires proof of "immediate compelling necessity," except where the landlord is a veteran. In the latter case he may prove either requirement.

In our opinion, plaintiff did not prove that she seeks in good faith to recover possession of the premises for immediate use and occupancy as a dwelling for herself, nor did she prove that she has an immediate compelling necessity to recover possession of such accommodations for use and occupancy as a dwelling for herself. It is interesting to note that the lease formerly in effect was made by Helen Lakowski "As Agent for the Owners," that plaintiff testified that she and her husband "are the owners" of the real estate, that they have been the "full owners" since 1940, and owned it "jointly with a partner since 1926," and that plaintiff's husband testified that "he purchased the property in 1926." Defendant, however, does not appear to question that Elizabeth Lakowski is the landlord. Although the plaintiff and her husband have had an interest in the real estate since 1926, they did not endeavor to occupy an apartment therein until 1945. The OPA reduced the rent by $2.50 in 1943 and by $3.00 in 1945, or a total reduction of $5.50. Plaintiff testified that her husband, due to poor health, had

lost his work and that "she and her husband needed to move into the property so that he could replace the janitor there and reduce expenses to make up for his lost income from wages." She stated that her husband suffers from arthritis and that he is "partially crippled by it." There was no testimony as to when he became ill, where plaintiff and her husband lived, what their financial condition was, whether he would be able to do the janitor work, why it would be necessary for him to live in the apartment building in order to do the janitor work, or why plaintiff and her husband required a second floor apartment. A daughter of plaintiff testified, but there was no other testimony as to what the family consisted of, or whether the daughter lived with plaintiff and her husband. The respective parties in their briefs state that there was evidence that plaintiff and her husband are living in a basement apartment. Plaintiff amplifies this statement by saying that her husband is living in a basement apartment "which is bad for his arthritis." The report of proceedings states that it contains "all the testimony and all the proceedings had in said cause," but it does not contain any reference to a basement apartment, or as to where plaintiff and her husband live. If we accept the statements in the briefs that plaintiff and her husband are living in a basement apartment and that he is ill from arthritis, it does not seem reasonable that she would desire to move into a second floor apartment in order that expenses could be reduced by her husband doing the janitor work. He would be required to frequently walk up and down stairs and perform the usual tasks of a janitor in a six apartment building.

The burden was on plaintiff to prove by a preponderance of the evidence that she sought in good faith to recover possession of the apartment for immediate use and occupancy as a dwelling for herself, or that she had an immediate compelling necessity for

such occupancy. She failed to make this proof. Good faith, like fraud, is difficult to define. It is a question of fact depending upon many facts and conditions. On an issue of good faith under OPA regulations, the circumstances must be taken into consideration in determining whether a landlord is merely attempting to juggle his property for profit, or legitimately requires it to live in. *Sviggum v. Phillips,* 217 Minn. 586, 15 N. W. (2d) 109. Whether there is an "immediate compelling necessity," also presents a question of fact.

The finding and judgment are against the manifest weight of the evidence. The judgment of the municipal court of Chicago is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

*Judgment reversed and cause remanded with directions.*

KILEY, P. J., and LEWE, J., concur.